IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AIR4CASTS LIMITED,<br><br>                Plaintiff,<br><br>v.<br><br>PAXSMART, INC.,<br><br>                Defendant. | Civil Action No. _____<br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

Plaintiff Air4Casts Limited ("Air4Casts" or "Plaintiff"), by and through its undersigned attorneys, hereby brings this Complaint against Defendant Paxsmart, Inc. ("Paxsmart" or "Defendant") and alleges as follows:

**INTRODUCTION**

1. This action arises out of Paxsmart's brazen and shameless theft of Air4Casts's trade secret and other confidential and proprietary business information.

2. Air4Casts is an acknowledged leader in the field of data analytics, specializing in the provision of air travel data-related services.

3. Air4Casts's sterling reputation in the market has been achieved at great expense to Air4Casts and is the product of over three decades of investment and innovation that allow it to provide a depth and range of services unparalleled in the industry.

4. Knowing that it could not compete with Air4Casts organically, Paxsmart illicitly obtained Air4Casts's valuable trade secret and other confidential and proprietary business information and has been pawning off Air4Casts's hard-earned and valuable insights as its own to entice existing and prospective customers to take their business from Air4Casts to Paxsmart.

5. Paxsmart's actions have damaged and continue to damage Air4Casts's existing and prospective customer relationships and to jeopardize and damage Air4Casts's decades-long effort to establish itself as an industry leader through costly and time-consuming investment and innovation.

6. Accordingly, Air4Casts brings this action to bring a halt to Paxsmart's blatant and obvious misappropriation of Air4Casts's trade secret and other confidential and proprietary business information.

## PARTIES

7. Plaintiff Air4Casts is a foreign corporation organized under the laws of the United Kingdom and having its principal place of business at 78-79 Pall Mall London SW1Y 5ES, United Kingdom.

8. Defendant Paxsmart is a corporation organized under the laws of the Commonwealth of Pennsylvania and having its principal place of business at 1650 Market Street, 36th Floor, Philadelphia, PA 19103.

## JURISDICTION AND VENUE

9. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(2) because this is a dispute between a citizen of a State and a citizen of a foreign state, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

10. This Court has personal jurisdiction over Paxsmart because Paxsmart is a corporation organized under the laws of the Commonwealth of Pennsylvania and having its principal place of business in the Commonwealth of Pennsylvania.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Paxsmart is subject to personal jurisdiction in this District, resides in this District, and maintains its principal place of business in this District, and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL BACKGROUND

12. Established in 1990, Air4Casts is a leading provider of data collection, forecasting, analytics, research, and consulting services to support the needs of the global tourism, airline and airport travel industries.

13. Air4Casts's client base is broad and ranges from airports and airlines to financial institutions, with a specialist division which is devoted to the specific needs of the travel retail industry.

14. At the heart of Air4Casts's business is its robust air passenger database, which drives the services, insights, and value that Air4Casts delivers to its clients.

15. The breadth and depth of Air4Casts's air passenger data is unmatched in the industry, and includes such metrics as actual historic passenger data, future passenger forecasting, passenger nationality profiles, airline data, government data, and retailer data, among various other categories of information.

16. This breadth of data is the direct result of Air4Casts's three-decades-long investment in raw data collection, forecasting, polling, and sophisticated data modelling.

17. Paxsmart is a competitor of Air4Casts, and purports to offer its clients a similar range of air passenger data analytics and forecasting services across airports worldwide.

18. The breadth and quality of Paxsmart's air passenger data, however, is significantly limited compared to that of Air4Casts's.

19.     For instance, Paxsmart's air passenger data only includes departing passenger information, whereas Air4Casts tracks both departing and arriving passenger data.

20.     Furthermore, until Paxsmart began misappropriating Air4Casts's passenger data, it relied exclusively on a limited range of third party raw data sources, whereas Air4Casts licenses data from a wider range of third parties, including sources who provide data exclusively to Air4Casts, in addition to being a primary data source in its own right.

21.     Recognizing that its lack of data compared to Air4Casts placed it at a competitive disadvantage compared to Air4Casts, beginning in or about 2020, Paxsmart decided to take action to expand its database to compete more aggressively with Air4Casts.

22.     First, in or about 2020, Paxsmart took out a subscription to purchase raw passenger data from Airports Council International ("ACI"), a trade association comprised of airport authorities operating thousands of airports worldwide and which also licenses data to Air4Casts.

23.     Upon information and belief, however, the data that Paxsmart licensed from ACI beginning in 2020, however, did not include any historic passenger data, leaving Paxsmart still at a competitive disadvantage with respect to Air4Casts and its robust historic travel database developed through investments spanning three decades.

24.     Faced with this continued shortcoming, Paxsmart again decided to take action, but this time, rather than improving its own historic data offerings through proper means, it devised a new tactic to compete with Air4Casts: stealing Air4Casts's valuable historic passenger data and brazenly pawning it off to customers as Paxsmart's own data.

25.     Upon information and belief, Paxsmart carried out this theft by enticing one of Air4Casts's own customers to provide the data to Paxsmart in clear breach of the customer's obligations to Air4Casts.

26. Following the theft, as early as June 2021, Paxsmart quietly began replacing the (inferior) historic data it had previously been providing to its clients with figures it had lifted directly from Air4Casts.

27. Since Air4Casts does not obtain any data from Paxsmart, it did not become aware of Paxsmart's data heist until in or about mid-2024, when Paxsmart's misconduct became so apparent that even some of Paxsmart's own customers caught on to its grift and felt compelled to alert Air4Casts that Paxsmart had misappropriated its data.

28. These Paxsmart customers provided Air4Casts with overwhelming and irrefutable evidence that Paxsmart had improperly acquired and begun exploiting Air4Casts's historic travel data, all without Air4Casts's knowledge or consent.

29. Set forth below are just a few striking examples of Paxsmart's blatant misappropriation of Air4Casts's data, as reported by Paxsmart's own customers.

**A.  Paxsmart's Misuse of Air4Casts's Historic Monthly Passenger Estimates for Nội Bài International Airport and Tan Son Nhat International Airport**

30. First, Paxsmart's customers provided Air4Casts with overwhelming evidence that Paxsmart had pilfered Air4Casts's historic air passenger data for Nội Bài International Airport ("HAN") and Tan Son Nhat International Airport ("SGN") in Vietnam.

31. Certain airports, such as HAN and SGN, only publish passenger data on an annual basis.

32. Thus, for airports like HAN and SGN, there is *no* monthly passenger data available in the public domain or otherwise.

33. As a result, Air4Casts *estimates* monthly passenger data for both HAN and SGN (and discloses to its customers that the monthly figures it provides are estimates).

34. Paxsmart also provides estimated monthly passenger data for HAN and SGN but, as recently as January 2021, Paxsmart's estimates bore no resemblance whatsoever to Air4Casts's.

35. By way of example, as of January 2021, Paxsmart provided its customers with the following numbers for departing international passengers from HAN and SGN in the years 2018 and 2019:[1]



36. By June 2021, however, Paxsmart had acquired Air4Casts's historic monthly data for HAN and SGN and revised the numbers it provided to customers accordingly.

37. Specifically, because Air4Casts provides estimates for both departing and arriving passengers (while Paxsmart provides only departing passenger information), Paxsmart simply divided Air4Casts's monthly *estimates* by two and swapped these halved figures into the data it provided for HAN and SGN for 2018 and 2019:[2]

---

[1] A larger version of this screenshot is attached hereto as Exhibit 1.
[2] A larger version of this screenshot is attached hereto as Exhibit 2.



38. Furthermore, after acquiring Air4Casts's data, Paxsmart began providing—for the first time—estimates for domestic passengers in addition to international passengers.

39. These numbers, too, correspond exactly to Air4Casts's estimates for domestic passengers, once again divided by two to account for Paxsmart's provision of data for departures only.

40. There is no credible explanation for Paxsmart's sudden decision to revise its monthly estimates to exactly match Air4Casts's estimates, divided by two—other than that Paxsmart improperly obtained Air4Casts's data and knowingly and willfully misused it.

**B.    Paxsmart's Misuse of Air4Casts's Historic Passenger Data For Haikou Meilan Airport**

41. Second, Paxsmart customers alerted Air4Casts that Paxsmart had obtained Air4Casts's historic passenger data for Haikou Meilan Airport ("HAK") in China.

42. HAK's actual weekly and monthly domestic and international passenger numbers are not available in the public domain, but Air4Casts receives them directly from HAK as part of a restricted distribution list.

43. Paxsmart, however, is not on this restricted distribution list and, as a result, has never received this data directly from HAK.

7

44. Thus, as of January 2021, Paxsmart was only able to provide its customers with estimates of the monthly departing international passengers from HAK in the years 2018 and 2019:[3]



45. These estimates were significantly at odds with the actual passenger data provided by HAK to Air4Casts.

46. However, by June 2021, Paxsmart had acquired Air4Casts's actual passenger data for HAK in 2018 and 2019, and swapped out its estimates for Air4Casts's actual numbers, again divided by two to arrive at a number for departing international passengers:[4]



47. Here, too, there can be no credible explanation aside from misappropriation as to why Paxsmart's revised numbers align exactly with Air4Casts's numbers divided by two.

48. However, the fact that Paxsmart acquired this actual historic passenger data from Air4Casts (and not through legitimate means) is also apparent for an additional reason.

49. While Paxsmart was able to obtain Air4Casts's historic data for the years 2018 and 2019, its theft did not include Air4Casts's data for HAK for the year 2020 onwards.

50. Nonetheless, as of June 2021, Paxsmart provided its customers with monthly international departure numbers through May 2021.

---

[3] A larger version of this screenshot is attached hereto as Exhibit 3.
[4] A larger version of this screenshot is attached hereto as Exhibit 4.

51. Critically, however, HAK only operated domestic flights from March 2020 through February 2023 due to the Covid-19 pandemic.

52. Therefore, during this time, there were *zero* actual departing international passengers at HAK.

53. Paxsmart, however, continued to report monthly departing international passenger numbers through May 2021.

54. Plainly, if Paxsmart had legitimately obtained the actual data from HAK (or, indeed, any data source claiming to report international passenger numbers for HAK), it would have known that there were, in fact, no departing international passengers during these months and accurately reported this fact to its customers.

55. Instead, Paxsmart simply made-up numbers for these non-existent passengers, confirming that it did not (and likely never had) legitimate access to HAK's actual data, and instead relied on numbers stolen from Air4Casts for its pre-2020 data.

C. **Paxsmart's Misuse of Air4Casts's Historic Passenger Data for Los Angeles International Airport**

56. Third, Air4Casts learned from Paxsmart's customers that Paxsmart had copied Air4Casts's historic passenger data for Los Angeles International Airport ("LAX").

57. While LAX publishes monthly passenger data in the public domain,[5] and similarly reports this data to the United States Bureau of Transportation Statistics,[6] this monthly data includes a significant number of individuals (*e.g.*, flight crew members) who do not purchase their own tickets.

---

[5] *See* https://www.lawa.org/lawa-investor-relations/statistics-for-lax/volume-of-air-traffic.
[6] *See* https://www.transtats.bts.gov/.

58. LAX reports data for customers who purchase their own tickets exclusively to ACI, and does not otherwise make this data available.

59. Air4Casts, in turn, acquires this data from ACI pursuant to a data license agreement.

60. While, as set forth above, Paxsmart took out a subscription to obtain certain ACI data in 2020, upon information and belief, its data subscription did *not* include LAX's historic passenger data for years prior to 2020.

61. Nonetheless, in June 2022, Paxsmart was providing to its customers monthly departure numbers for the years 2018 and 2019 that corresponded exactly to the data that Air4Casts had lawfully obtained from ACI, once again divided by two:[7]



62. Tellingly, this data bears no resemblance to LAX's publicly-reported data for the years 2018 and 2019, further confirming that Paxsmart obtained it from Air4Casts.

63. For example, LAX's publicly disclosed figure for arriving and departing international passengers for the month of January 2018 was 2,070,921.

64. Applying Paxsmart's departing international passenger methodology—*i.e.*, dividing the information LAX made public by two—would have resulted in Paxsmart reporting a total of 1,035,461 departing international passengers in January 2018.

---

[7] A larger version of this screenshot is attached hereto as Exhibit 5.

65. Instead, as of June 2022, Paxsmart reported 1,004,952 departing international passengers for LAX in January 2018—exactly half the figure published by Air4Casts for that same month.

66. Here too, then, there is no credible explanation other than that Paxsmart simply copied Air4Casts's data, divided it by two, and attempted to pass it off to customers as Paxsmart's own data.

D.    **Paxsmart's Misuse of Air4Casts's Historic Passenger Data for Alexandria Airport**

67. As a final example, Air4Casts has learned that Paxsmart has misappropriated Air4Casts's published data for Alexandria Airport ("LGAX") in Alexandria Greece.

68. To avoid confusion with Alexandria International Airport in Alexandria, Egypt, Air4Casts refers to LGAX as "Alexandria Gr." Upon information and belief, this nomenclature is unique to Air4Casts.

69. Upon acquiring Air4Casts's data, Paxsmart not only began providing its customers with passenger data for LGAX data for the very first time, but also adopted Air4Casts's informal nomenclature, also referring to LGAX as "Alexandria Gr":[8]



---

[8] A larger version of this screenshot is attached hereto as Exhibit 6.

70. Moreover, Paxsmart again provided its customers with monthly departure numbers for LGAX for the years 2018 and 2019 that correspond exactly to Air4Casts's data, divided by two to arrive at a figure for departing passengers only.

71. LGAX, however, actually published *separate* data for departing and arriving passengers for the years 2018 and 2019; thus, if Paxsmart had had legitimate access to LGAX's historic passenger data, then it would have provided its customers with precise numbers of departing passengers, rather than crudely dividing Air4Casts's total numbers by two.

72. Even more damning, however, is the fact that Paxsmart continued to report monthly departing passenger "data" to its customers (which it estimated based on Air4Casts's stolen historic data) even after LGAX ceased operating commercially.

73. Until December 2019, LGAX was primarily a military airport that serviced only a small number of international passengers.

74. In December 2019, however, LGAX closed as a commercial airport entirely and reverted to pure military status.

75. Consequently, since December 2019 there have *zero* departing international passengers each month at LGAX.

76. Paxsmart, however, was evidently unaware of this fact when it misappropriated Air4Casts's historic passenger data for LGAX, and continued to provide its customers with monthly "data" for LGAX as late as August 2023. *See* Exhibit 6.

77. Of course, there was no actual data for LGAX from January 2020 through August 2023, a fact of which Paxsmart no doubt would have been aware had it obtained data for LGAX through proper means.

78. Thus, again, there is no credible explanation for Paxsmart's data other than that it took and misused Air4Casts's data and information for LGAX.

79. The foregoing are just a few examples of Paxsmart's blatant misappropriation of Air4Casts's data, the full extent of which Air4Casts continues to investigate.

80. The unearned leg-up that Paxsmart has gained in the market has already caused Air4Casts to lose existing and prospective customer relationships, which damage threatens to continue if Paxsmart's conduct goes unchecked.

## COUNT I
**Misappropriation of Trade Secrets in Violation of the Pennsylvania Uniform Trade Secrets Act, 12 PA C.S. § 5301, *et seq*.**

81. Air4Casts incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

82. Paxsmart acquired access to and knowledge of certain of Air4Casts's trade secret information, including but not limited to Air4Casts's historic air passenger data.

83. Paxsmart then used and disclosed Air4Casts's trade secret information for its own benefit and in direct competition with Air4Casts by improperly providing access to Air4Casts's trade secret information to third-parties, including both current and prospective customers of Paxsmart and Air4Casts.

84. Paxsmart's conduct constitutes unlawful misappropriation of trade secrets in violation of the Pennsylvania Uniform Trade Secrets Act 12 Pa.C.S. § 5301, *et seq.*

85. Air4Casts's trade secret information is not available to the general public, could not originate with another party, and was compiled and/or created at substantial expense to Air4Casts. Specifically, much of the stolen data is the result of Air4Casts's substantial investments in data collection, forecasting, and modelling over a period of over three decades.

86. Air4Casts has taken reasonable and substantial steps to maintain the secrecy of its trade secret information.

87. Air4Casts's trade secret information could not easily be duplicated and derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, other persons who can obtain economic value from their disclosure or use.

88. Air4Casts's trade secret information provides Air4Casts with a competitive advantage in the marketplace.

89. Use of Air4Casts's trade secret information unjustly enriches Paxsmart.

90. Paxsmart's conduct has been intentional, willful, and malicious, and undertaken with reckless indifference to, and an intent to harm, Air4Casts.

91. As a direct and proximate result of Paxsmart's misappropriation of Air4Casts's trade secret information, and the Paxsmart's subsequent use of that information for its own financial benefit, Air4Casts has suffered, is suffering, and will continue to suffer incalculable financial loss, permanent irreparable harm, loss of the confidentiality of its proprietary business information, lost sales, loss of goodwill, loss of business opportunity, and other continuing harm, as well as other damages including attorneys' fees and costs.

**WHEREFORE**, Air4Casts requests that this Court enter judgment in its favor including injunctive relief, actual damages, incidental and consequential damages as permitted by law, damages for any unjust enrichment caused by Paxsmart's misappropriation, punitive damages, attorneys' fees and costs, and such other relief as this Court deems appropriate.

## COUNT II
### Tortious Interference With Existing and Prospective Business Relations

92. Air4Casts incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

93. Paxsmart has engaged and continues to engage in the enticement of, solicitation of, and acceptance of business from Air4Casts's customers through its misappropriation of Air4Casts's trade secret and other confidential and proprietary information.

94. Paxsmart knew of the relationships between Air4Casts and its customers.

95. After misappropriating Air4Casts's trade secret and other confidential and proprietary information, Paxsmart utilized such information to develop competing services and have marketed, offered for sale, and sold such services to existing and prospective Air4Casts customers.

96. Paxsmart's interference was improper in motive and means, as Paxsmart improperly utilized Air4Casts's trade secret and other confidential and proprietary information to offer services that directly compete with Air4Casts's and targeted Air4Casts's existing and prospective customers with the purpose of taking business from Air4Casts.

97. Paxsmart's conduct was and is willful, intentional, and calculated to cause damage to Air4Casts.

98. As a direct and proximate result of Paxsmart's interference, Air4Casts has suffered, is suffering, and will continue to suffer incalculable financial loss, permanent irreparable harm, loss of advantage in the market, lost sales, loss of goodwill, loss of business opportunity, and other continuing harm, as well as other damages including attorneys' fees and costs.

WHEREFORE, Air4Casts requests that this Court enter judgment in its favor including injunctive relief, actual damages, incidental and consequential damages as permitted by law, punitive damages, attorneys' fees and costs, and such other relief as this Court deems appropriate.

## COUNT III
### Unfair Competition

99. Air4Casts incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

100. Paxsmart's conduct as set forth herein constitutes unfair competition.

101. As set forth above, Paxsmart has knowingly misappropriated Air4Casts's trade secret and other confidential and proprietary information to offer services that directly compete with Air4Casts's and targeted Air4Casts's existing and prospective customers with the purpose of taking business from Air4Casts by attempting pass off Air4Casts's trade secret and other confidential and proprietary information to customers as Paxsmart's own data.

102. All of this conduct was in an effort to obtain an unfair competitive advantage in the marketplace vis-à-vis Air4Casts.

103. Paxsmart's actions have been willful and wanton and were carried out with the specific intent to injure Air4Casts in the conduct of its business and to gain an unfair competitive advantage over Air4Casts.

104. As a direct and proximate result of Paxsmart's unfair competition, Air4Casts has suffered, and will continue to suffer incalculable financial loss, permanent irreparable harm, loss of the confidentiality of its proprietary business information, lost sales, loss of goodwill, loss of business opportunity, and other continuing harm, as well as other damages including attorneys' fees and costs.

**WHEREFORE**, Air4Casts requests that this Court enter judgment in its favor including injunctive relief, actual damages, incidental and consequential damages as permitted by law, punitive damages, attorneys' fees and costs, and such other relief as this Court deems appropriate

## COUNT IV
### Unjust Enrichment

105. Air4Casts incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

106. Paxsmart has benefited from Air4Casts by misappropriating Air4Casts's trade secret and other confidential and proprietary information without authorization from Air4Casts.

107. Paxsmart has accepted those benefits by utilizing Air4Casts's trade secret and other confidential and proprietary information to offer services that directly compete with Air4Casts's and targeted Air4Casts's existing and prospective customers with the purpose of taking business from Air4Casts.

108. Paxsmart was unjustly enriched by obtaining the benefits of this information without having to expend the substantial amounts of time and money that Air4Casts invested over the course of three decades to create its trade secret and other confidential and proprietary information.

109. Paxsmart has improperly retained these benefits based upon its ongoing use of Air4Casts's trade secret and other confidential and proprietary information in the operation of a competing business venture. In particular, Paxsmart has been able to obtain new customers as well as to solicit customers from Air4Casts to Paxsmart, resulting in the loss of profits, business opportunities, and goodwill that rightly belonged to Air4Casts.

110. Paxsmart's conduct and retention of benefits as set forth above constitutes unjust enrichment.

111. Air4Casts is entitled to restitution and repayment as a result of Paxsmart's unjust enrichment.

112. Under these circumstances, it is inequitable and against good conscience to allow Paxsmart to retain the benefits of Air4Casts's trade secret and other confidential and proprietary information.

**WHEREFORE**, Air4Casts requests that this Court enter judgment in its favor including actual damages, incidental and consequential damages as permitted by law, disgorgement of the amount by which Paxsmart was unjustly enriched, punitive damages, attorneys' fees and costs, and such other relief as this Court deems appropriate.

## RELIEF REQUESTED

**WHEREFORE**, Air4Casts respectfully requests that the Court enter judgment in its favor and against Paxsmart as follows:

a. For actual and compensatory damages that Air4Casts is entitled to recover as a result of Paxsmart's actions;

b. For incidental and consequential damages as permitted by law;

c. For any statutory damages, including exemplary damages;

d. For damages in the form of a constructive trust in the amount that Paxsmart has been unjustly enriched;

e. For damages in the form of disgorgement in the amount Paxsmart profited from its wrongful activities;

f. For damages for lost profits Air4Casts would have received but for Paxsmart's conduct;

g. For punitive damages to punish Paxsmart for its unlawful actions;

h. For Air4Casts's attorneys' fees and costs;

i. For an equitable accounting of all income, profits, and pecuniary benefits resulting from Paxsmart's conduct;

j. For permanent injunctive relief restraining Paxsmart, as well as its employees, agents, affiliates and all persons acting in concert with it from using, copying, publishing, disclosing, transferring, or selling Air4Casts's trade secret and other confidential and proprietary information, and from obtaining any commercial advantage or unjust enrichment from its misappropriation of Air4Casts's trade secret and other confidential and proprietary information;

k. For an order requiring Paxsmart, as well as its employees, agents, affiliates and all persons acting in concert with it, to return to Air4Casts any and all of Air4Casts's trade secret and other confidential and proprietary information;

l. For pre-judgment and post-judgment interest; and

m. For all such other relief as this Court deems appropriate.

## JURY TRIAL DEMANDED

Air4Casts hereby demands a trial by jury on all issues so triable in this matter.

Dated: February 2, 2026

Respectfully submitted,

**BLANK ROME LLP**

*/s/ Kevin M. Moran*
Heidi G. Crikelair (PA ID No. 323898)
Matthew A. Homyk (PA ID No. 312265)
Kevin M. Moran (PA ID No. 332105)
One Logan Square
130 North 18th Street
Philadelphia, PA 19103-6998
215.569.5500

Heidi.Crikelair@blankrome.com
Matthew.Homyk@blankrome.com
Kevin.moran@blankrome.com

20